UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELVIN WILLIAMS,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>UNKNOWN, et al.,<br><br>　　　　　Defendants. | No. 2: 20-cv-1950 KJM KJN P<br><br><br>FINDINGS AND RECOMMENDATIONS |

I.　　Introduction

Plaintiff is a state prisoner, proceeding without counsel, with a civil rights action pursuant to 42 U.S.C. § 1983. Pending before the court is plaintiff's fourth amended complaint. (ECF No. 69.) For the reasons stated herein, the undersigned recommends that this action be dismissed.

II.　　Background

Plaintiff filed the original complaint on September 16, 2020. (ECF No. 1.) On October 28, 2020, plaintiff filed a first amended complaint. (ECF No. 18.) On November 9, 2020, the undersigned dismissed the first amended complaint with leave to file a second amended complaint. (ECF No. 20.)

On December 9, 2020, plaintiff filed a second amended complaint raising three claims: 1) unsafe conditions caused by COVID-19 pandemic; 2) denial of access to the courts; and 3) plaintiff's conviction was invalid. (ECF No. 26.)

1    On March 25, 2021, the undersigned issued an order and findings and recommendations addressing plaintiff's second amended complaint. (ECF No. 38.) The undersigned recommended that claims two and three be dismissed as improperly joined to claim one. (Id.) The undersigned also recommended that plaintiff's request for release from custody, contained in claim one, be dismissed as improperly raised in a civil rights action. (Id.) The undersigned granted plaintiff leave to file a third amended complaint raising claims regarding conditions of confinement related to the COVID-19 pandemic. (Id.) The undersigned also dismissed with leave to amend plaintiff's claim alleging that prison officials improperly read his petition for medical parole, raised in claim two. (Id.)

On April 8, 2021, plaintiff filed a third amended complaint. (ECF No. 39.)

On September 28, 2021, the Honorable Kimberly J. Mueller adopted the March 25, 2021 findings and recommendations, except for the recommendation that plaintiff's request for release from custody be dismissed as improperly raised in a civil rights action. (ECF No. 61.) Judge Mueller dismissed with leave to amend plaintiff's request for release from custody claim, contained in claim one, based on allegedly unsafe conditions created by the COVID-19 pandemic. (Id.)

Based on Judge Mueller's September 28, 2021 order, on October 1, 2021, the undersigned granted plaintiff thirty days to file a fourth amended complaint. (ECF No. 62.) If plaintiff did not file a fourth amended complaint within that time, the undersigned would screen the third amended complaint filed April 8, 2021. (Id.)

On October 14, 2021, plaintiff filed a pleading titled, "Fourth Amended Complaint." (ECF No. 64.) This document did not include a fourth amended complaint. (Id.) Instead, plaintiff attached a copy of the October 1, 2021 order to this document. (Id.)

Based on plaintiff's failure to file a fourth amended complaint, on January 6, 2022, the undersigned issued an order screening plaintiff's third amended complaint. (ECF No. 68.)

In claim one of the third amended complaint, plaintiff alleged an Eighth Amendment claim (and various state law claims) based on allegedly unsafe conditions created by the COVID-19 pandemic. (ECF No. 39 at 9.) In claim two, plaintiff alleged violation of his right to access

2

the courts. (Id. at 10.) In claim three, plaintiff challenged the validity of his conviction. (Id.)

In the order screening the third amended complaint, the undersigned found that plaintiff's claims alleging violation of his right to access the courts and challenging the validity of his criminal conviction were improperly joined to claim one alleging unsafe conditions created by the COVID-19 pandemic. (ECF No. 68 at 3.) The undersigned dismissed claim one with leave to amend because plaintiff failed to link any defendants to this claim. (Id. at 4.) The undersigned also found that while plaintiff alleged that defendants Brown and Johnson retaliated against him, the third amended complaint contained no allegations supporting a retaliation claim. (Id. at 4-5.)

### III. Fourth Amended Complaint

On February 2, 2022 plaintiff filed a fourth amended complaint. (ECF No. 69.) Named as defendants in the fourth amended complaint are Warden Rick Hill, Karen Brown, K. Spencer, M. Colvin, M. Johnson, J. Glissmeyer Carone, K. Leavitt, Carlos Carillo and C. Sayer. (Id. at 2.)

#### A. Claim One

In claim one, plaintiff alleges violation of the Eighth Amendment based on inadequate policies for screening COVID-19. (Id. at 3.) Plaintiff alleges that COVID-19 spread exponentially within the California Department of Corrections and Rehabilitation ("CDCR"). (Id. at 2.) The only defendant named in connection with claim one is defendant Hill. Plaintiff alleges that defendant Hill is responsible for supervising, disciplining, and training all correctional officers and staff. (Id.) Plaintiff alleges that defendant Hill violated plaintiff's right to be free from cruel and unusual punishment. (Id. at 3.) Plaintiff alleges that he (plaintiff) tested positive for COVID-19 on or around January 26, 2022. (Id.) Plaintiff alleges that he is entitled to money damages for contracting COVID-19. (Id.)

For the reasons stated herein, the undersigned finds that plaintiff's fourth amended complaint does not state a potentially colorable claim against defendant Hill.

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Department of Social Servs., 436 U.S. 658 (1978) ("Congress did not intend § 1983 liability to attach where . . . causation [is] absent."); Rizzo v. Goode, 423 U.S. 362 (1976) (no affirmative link between the incidents of police misconduct and the adoption of any plan or policy demonstrating their authorization or approval of such misconduct). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Moreover, supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979) (no liability where there is no allegation of personal participation); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978) (no liability where there is no evidence of personal participation), cert. denied, 442 U.S. 941 (1979). Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982) (complaint devoid of specific factual allegations of personal participation is insufficient).

Plaintiff's theory of liability against defendant Hill appears to be based on respondeat superior. As discussed above, supervisory personnel are not generally liable under § 1983 under a theory of respondeat superior.

Plaintiff also appears to suggest that defendant Hill enacted inadequate screening policies for COVID-19 which led to plaintiff contracting COVID-19. Supervisory liability may also exist without any personal participation if the official implemented "a policy so deficient that the policy itself is a repudiation of the constitutional rights and is the moving force of the constitutional violation." Redman v. Cty. of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991)

(citations and quotations marks omitted), abrogated on other grounds by Farmer v. Brennan, 511 U.S. 825 (1970).

Plaintiff's fourth amended complaint contains no specific allegations regarding COVID-19 screening policies. Plaintiff does not describe how these screening policies were allegedly inadequate. Accordingly, the undersigned finds that plaintiff's vague and conclusory allegations against defendant Hill based enactment of COVID-19 screening policies do not state a potentially colorable claim for relief. Ivey v. Board of Regents, 673 F.2d at 268 (vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient).

B. Claims Two and Three

*Improper Joinder*

Claim two alleges a violation of plaintiff's right to access the courts. (ECF No. 69 at 4-8.) Named as defendants in connection with claim two are defendants Hill, Spencer, Colvin and Sayer. (Id.) Claim three alleges equal protection violations, retaliation, due process violations and violations of the Ex Post Facto Clause. (Id. at 8.) Named as defendants in claim three are defendants Hill, Leavitt, Glissmeyer Carone and Carillo. (Id. at 9.) The gravamen of claim three appears to be plaintiff's allegation that defendants wrongly found that he did not qualify for parole consideration under Proposition 57. (Id. at 9.)

As discussed above, Judge Mueller previously dismissed plaintiff's claims raised in the second amended complaint alleging denial of access to the courts and challenging the validity of plaintiff's criminal conviction as improperly joined to plaintiff's claim challenging conditions of confinement related to the COVID-19 pandemic. Despite this previous ruling, the undersigned herein considers whether claims two and three raised in the fourth amended complaint are properly joined to claim one because these claims are somewhat different than the previously dismissed claims.

Federal Rule of Civil Procedure 18(a) limits the joinder of claims, whereas Federal Rule of Civil Procedure 20(a) limits the joinder of parties in a single lawsuit. Rule 18(a) states: "A party asserting a claim ... may join, as independent or alternative claims, as many claims as it has

5

against an opposing party." Rule 20(a)(2) states: "[p]ersons ... may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."

Courts have recognized that when multiple parties are named, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18....
>
> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

Herndon v. Mich. Dep't of Corr., 2021 WL 1559156, at *2 (W.D. Mich. April 12, 2021) (citing 7 Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure § 1655 (3d ed. 2001), quoted in Proctor v. Applegate, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009), and Garcia v. Munoz, 2008 WL 2064476, at *3 (D.N.J. May 14, 2008); see also United States v. Mississippi, 380 U.S. 128, 142–43 (1965)).

Plaintiff's fourth amended complaint does not comply with Rule 20 because plaintiff does not assert a claim for relief against each named defendant that arises out of the same transaction or occurrence and presents questions of law or fact common to all. Claims two and three, alleging inadequate law library access and a violation of Proposition 57, are unrelated to claim one, alleging inadequate COVID-19 screening policies. While defendant Hill is named as a defendant in all three claims, claims two and three do not share any other defendants. For these reasons, the undersigned finds that plaintiff's fourth amended complaint fails to comply with Rule 20. Accordingly, claims two and three should be dismissed as improperly joined.

For the reasons stated herein, the undersigned also finds that claims two and three fail to state potentially colorable claims for relief.

*Claim Two*

Plaintiff alleges that after the January 6, 2022 order from the court dismissing his third amended complaint with leave to amend, he received Priority Library User ("PLU") status on January 24, 2022, but never received a PLU ducat. (ECF No. 69 at 4.) Plaintiff alleges that defendant Colvin told the tier officer that he would not issue the ducat because "we're on lockdown." (Id.) Plaintiff alleges that this was a lie. (Id.) Plaintiff alleges that his December 26, 2021 PLU request was also denied (Id.) Plaintiff alleges that his motion for re-sentencing was denied on December 16, 2021. (Id.) Plaintiff suggests that the motion for re-sentencing was denied because plaintiff was denied access to the law library. (Id. at 4-5.)

The Constitution guarantees prisoners the fundamental right to meaningful access to the Courts. Lewis v. Casey, 518 U.S. 343, 350-51 (1996). In order to prevail on a claim of inadequate access to the law library, an inmate must establish: (1) "the access was so limited as to be unreasonable"; and (2) "the inadequate access caused him actual injury, i.e., show a 'specific instance in which [he] was actually denied access to the courts.'" Vandelft v. Moses, 31 F.3d 794, 797 (9th Cir. 1994) (citation omitted). "The function of the injury requirement is to determine whether the unreasonably limited access to the law library actually deprived the prisoner of access to the courts. If no actual injury has resulted, then the rights of the prisoner have not been infringed, and the inquiry need go no further." Id. Actual injury is "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." Lewis, 518 U.S. at 348.

While plaintiff alleges that he was denied a PLU ducat in order to attend the law library to prepare his fourth amended complaint, the record demonstrates that plaintiff filed a 37 pages long fourth amended complaint (including exhibits). (ECF No. 69.) The record also reflects that plaintiff did not request an extension of time to file his fourth amended complaint due to inadequate law library access. Based on these circumstances, the undersigned finds that plaintiff has not demonstrated an actual injury based on his alleged failure to receive a PLU ducat in January 2022.

////

1      Plaintiff alleges that his December 26, 2021 PLU request was also denied   However, plaintiff does not allege that he suffered any actual injury based on the denial of his PLU request on December 26, 2021.

       Plaintiff suggests that his motion for re-sentencing was denied on December 16, 2021 because plaintiff received inadequate law library access.  However, plaintiff does not allege any facts supporting this claim.  For these reasons, the undersigned finds that plaintiff has not stated a potentially colorable claim for denial of access to the courts based on the alleged denial of his motion for re-sentencing.

       In claim two, plaintiff also alleges that he experienced racial discrimination.  Plaintiff alleges that his request for a printout of case law was denied to him but granted to an inmate of another race.  (Id. at 5.)  However, plaintiff does not allege that a defendant named in the fourth amended complaint denied his request for the printout of the case law.  Accordingly, this claim should be dismissed because no defendant is linked to this claim.

       Plaintiff suggests that inadequate law library access violated the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA").   (Id. at 5-6.)  Plaintiff alleges that defendants failed to provide him with the reasonable accommodations they agreed to provide in Armstrong.  (Id. at 5.)

       Plaintiff is apparently referring to a class action, Armstrong v. Davis, No. CV 94–2307–CW, in which the District Court for the Northern District of California ordered a remedial plan to enjoin practices that discriminated against disabled inmates in California prisons.  See generally Armstrong v. Davis, 275 F.3d 849 (9th Cir. 2001); Armstrong v. Wilson, 124 F.3d 1019 (9th Cir. 1997) (affirming order requiring submission of a remedial plan for compliance by the CDCR with the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12131–34, and the Rehabilitation Act of 1973 (RA), 29 U.S.C. § 794, in California prisons).

       Plaintiff may not pursue any claims in this action based on an alleged violation of court orders issued in Armstrong.  A violation of a court order in Armstrong does not provide plaintiff with an independent claim for relief in this action.  See Cagle v. Sutherland, 334 F.3d 980, 986-87 (11th Cir. 2003) (consent decrees often go beyond constitutional minimum requirements, and do

not create or expand rights); Green v. McKaskle, 788 F.2d 1116, 1123 (5th Cir. 1986) (remedial decrees remedy constitutional violations but do not create or enlarge constitutional rights). To the extent that plaintiff wishes to seek assistance that he believes is due pursuant to the Armstrong plan, plaintiff "must pursue his request via the consent decree or through class counsel." Crayton v. Terhune, 2002 WL 31093590, *4 (N.D. Cal. Sept. 17, 2002).

To the extent plaintiff raises a claim alleging that his alleged inadequate law library access violated the ADA and RA (independent of Armstrong), for the reasons stated herein, the undersigned finds that plaintiff has not stated a potentially colorable claim for relief.

The undersigned analyzes plaintiff's claims alleging violation of the ADA and RA based on inadequate law library access "together because the statutes provide identical remedies, procedures and rights." Vos v. City of Newport Beach, 892 F.3d 1024, 1036 (9th Cir. 2018) (citation and internal quotation marks omitted). "Title II of the ADA and § 504 of the RA both prohibit discrimination on the basis of disability. The ADA applies only to public entities, whereas the RA proscribes discrimination in all federally-funded programs." Lovell v. Chandler, 303 F.3d 1039, 1052 (9th Cir. 2002).

Title II of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. "Public entity" extends to state prisons and thus Title II applies to prisoners. United States v. Georgia, 546 U.S. 151, 154 (2006); Pennsylvania Dep't of Corr. v. Yeskey, 524 U.S. 206, 210, (1998) ("State prisons fall squarely within the statutory definition of "public entity," which includes 'any department, agency, special purpose district, or other instrumentality of a State or States or local government.'") (quoting 42 U.S.C. § 12131(1)(B)).

To state a claim under Title II, a plaintiff must allege as follows:

> (1) he is an individual with a disability; (2) he is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) he was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of [his] disability.

9

O'Guinn v. Lovelock Corr. Ctr., 502 F.3d 1056, 1060 (9th Cir. 2007) (internal quotation marks and citations omitted, alteration in original).

In the fourth amended complaint, plaintiff alleges that a brain injury impacted his cognitive and emotional functions. (ECF No. 69 at 6-7.) Plaintiff's disability is apparently based on this alleged brain injury. However, plaintiff does not otherwise address how defendants denied or otherwise restricted his law library access based on this alleged disability. Plaintiff also does not explain how his alleged disability interfered with his ability to use the law library. For these reasons, the undersigned finds that plaintiff has not stated potentially colorable ADA or RA claims. Accordingly, these claims should be dismissed.

In claim two, plaintiff also alleges that defendants Hill, Colvin, Spencer and Sayers conspired against him for filing grievances. (Id. at 7.) The undersigned construes these allegations as a retaliation claim.

"Within the prison context, a viable claim for First Amendment retaliation entails five basic element: (1) An assertion that a state actor took some adverse action against an inmate; (b) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights; and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote and citations omitted).

While plaintiff alleges that defendants conspired against him for filing grievances, plaintiff does not describe any adverse actions defendants took against plaintiff in retaliation for filing grievances. Plaintiff does not allege how defendants conspired against him for filing grievances. Plaintiff's vague and conclusory allegations do not state a potentially colorable retaliation claim against these defendants.

*Claim Three*

As legal claims, plaintiff alleges that claim three involves alleged equal protection violations, retaliation, due process violations and violations of the Ex Post Facto Clause. (ECF No. 69 at 8.) Named as defendants in claim three are defendants Hill, Leavitt, Glissmeyer Carone and Carillo. (Id. at 9.)

The gravamen of claim three appears to be plaintiff's allegation that he qualifies for relief under Proposition 57. (Id. at 9.) Plaintiff alleges that he is a non-violent second striker. (Id.) Plaintiff suggests that the defendants wrongly found that he did not qualify for parole under Proposition 57.

California's Proposition 57, approved by voters in November 2016, makes parole more available for certain felons convicted of nonviolent crimes. Travers v. People of the State of California, 2018 WL 707546, at * 2 (N.D. Cal. Feb. 5, 2018). Because success on a Proposition 57 claim will not necessarily lead to immediate or more speedy release, a claim for relief pursuant to Proposition 57 is properly brought in a civil rights action. See Solano v. Calif. Substance Abuse Treat. Fac., 2017 WL 5640920, at *1-2 (C.D. Cal. 2017) (habeas claims regarding Prop. 57 should be brought in § 1983 action), rep. and rec. adopted, 2017 WL 5641027 (C.D. Cal. 2017); McCarary v. Kernan, 2017 WL 4539992, at *2 (E.D. Cal. 2017) (challenge to applicability of Prop. 57 properly brought in civil rights action).

The denial of parole consideration under Proposition 57 asserts a violation or misinterpretation of state law and is not cognizable under § 1983. See Bisel v. Kernan, 2018 WL 11294697, at *8 (E.D. Cal. Aug. 17, 2018) (cases cited therein). However, assuming plaintiff could state a cognizable claim for violation of his constitutional rights based on defendants' failure to grant him parole consideration under Proposition 57, plaintiff has not demonstrated that he is qualifies for parole consideration under Proposition 57. See Bisel, 2018 WL 11294697 at *10 ("Thus, if properly linked to named defendants, factual allegations showing that one was convicted of non-violent felonies, that the full term for the primary offense(s) (exclusive of enhancement, consecutive sentences, or alternative sentencing) have run, and that he has not received parole consideration as dictated by Proposition 57 despite repeated requests may state a cognizable due process claim.")

Proposition 57 added Article I, section 32 to the California Constitution and provides:

> (a) The following provisions are hereby enacted to enhance public safety, improve rehabilitation, and avoid the release of prisoners by federal court order, notwithstanding anything in this article or any other provision of law:

> (1) Parole Consideration: Any person convicted of a nonviolent felony offense and sentenced to state prison shall be eligible for parole consideration after completing the full term for his or her primary offense.
>
> (A) For purposes of this section only, the full term for the primary offense means the longest term of imprisonment imposed by the court for any offense, excluding the imposition of an enhancement, consecutive sentence, or alternative sentence.
>
> (2) Credit Earning: The Department of Corrections and Rehabilitation shall have authority to award credits earned for good behavior and approved rehabilitative or educational achievements.
>
> (b) The Department of Corrections and Rehabilitation shall adopt regulations in furtherance of these provisions, and the Secretary of the Department of Corrections and Rehabilitation shall certify that these regulations protect and enhance public safety.

Cal. Const. art. I, § 32.  See Cal. Code Regs., tit. 15, § 3490, subd. (c) ["'Violent Felony' is a crime or enhancement as defined in Penal Code section 667.5, subdivision (c)."].)

Attached to the fourth amended complaint is a case summary from an action plaintiff filed in state court, case no. B300682.  (ECF No. 69 at 19.)  In this case, plaintiff sought relief pursuant to California Penal Code section 1170.95.[1]  See People v. Williams, 2020 WL 4047909 (2020).  The state court opinion states that in 2013, plaintiff was convicted of ten counts, including two counts of attempted murder.  2020 WL 4047909, at *1.  Plaintiff was sentenced to an indeterminate term of 48 years to life, plus an eight-year determinate sentence.  (Id.)

Attempted murder is a violent felony under California law.  Cal. Penal Code § 667.5(c)(12).  Attempted murder is, presumably, plaintiff's primary offense.  Therefore, plaintiff is not entitled to parole consideration pursuant to Proposition 57.

Plaintiff, who is African American, alleges that other races (whites, others, south siders, Latin Americans) have been released via Propositions 36, 47 and 57.  (ECF No. 69 at 10.)  These allegations do not state a cognizable claim for relief for several reasons.  First, plaintiff does not allege that any named defendant released white, other, south sider or Latin American inmates via

---

[1] California Penal Code section 1170.95 permits resentencing for persons convicted under the felony murder rule under certain circumstances.

Propositions 36, 47 and 57.  Second, plaintiff does not allege that he qualifies for release pursuant to Propositions 36 and 47.  Third, plaintiff does not specifically allege that African American inmates other than plaintiff have been denied release pursuant to these Propositions.  Finally, as discussed above, plaintiff does not qualify for release pursuant to Proposition 57 because he was convicted of a violent felony.  For all of these reasons, plaintiff's claim alleging race discrimination based on the release of non-African American inmates via Propositions 36, 47 and 57 fails to state a potentially cognizable claim for relief.

Conclusion

As discussed above, plaintiff has been given multiple opportunities to amend his complaint.  Because the record shows that further amendment is futile, the undersigned recommends that this action be dismissed.  Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 339 (9th Cir. 1996).

Accordingly, IT IS HEREBY RECOMMENDED that this action be dismissed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, plaintiff may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  March 1, 2022

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

Will1950.56(2)